**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| PREMIER PAYMENTS ONLINE, INC. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| PAYMENT SYSTEMS WORLDWIDE, | : | NO. 11-3429 |
| CENTERLINE INTERNATIONAL, LLC, | : | |
| AMTRAK INTERNATIONAL, S.A., and | : | |
| PATRIARC HOLDINGS, INC. | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| PAYMENT SYSTEMS WORLDWIDE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| PREMIER PAYMENTS ONLINE, INC. | : | NO. 11-5272 |
| | : | |
| Defendant. | : | |

**MEMORANDUM RE: PREMIER PAYMENT ONLINE INC.'S**
**MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT**

Baylson, J.                                                                 **January 27, 2012**

## I.       Introduction

This case arises out of transactions between Premier Payments Online, Inc. ("PPO"), a

Pennsylvania corporation that acts as an intermediary with banks to provide credit card

processing services to merchants, and Payment Systems Worldwide ("PSW") and Centerline

International, LLC ("Centerline"), a California corporation and a Nevada limited liability

company with a common owner that resell payment processing services to merchants.  Under

1

certain purported agreements, Centerline and, subsequently, PSW referred merchants to PPO in exchange for commissions on the fees PPO earned from the merchants.  In June 2009, PPO began withholding fees allegedly owed to PSW due to actual and potential chargebacks by merchants.

On May 26, 2011, PPO commenced a civil action in this Court, No. 11-CV-3429 (the "Pennsylvania Action"), by filing a complaint (the "Pennsylvania Complaint") against PSW and Centerline, among others, asserting causes of action for breach of contract, unjust enrichment, misrepresentation, and declaratory relief.[1]  About a month later, on June 29, 2011, PSW and Centerline moved to dismiss the Pennsylvania Complaint for lack of jurisdiction and for failure to state a claim.  (No. 11-CV-3429, ECF No. 7.)  That same day, PSW commenced a separate civil suit in the United States District Court for the Eastern District of California, No. 11-CV-1082 (the "California Action"), by filing a complaint (the "California Complaint" or "Ca. Compl.") against PPO, asserting causes of action for willful failure to pay commissions under the California Independent Wholesale Sales Representatives Contractual Relations Act, Cal. Civ. Code § 1738.15 (the "California Act" or the "Act") (Count I), breach of contract (Count II), unjust enrichment (Count III), and declaratory relief (Count IV).  Centerline is not a plaintiff in the California Action.  On July 25, 2011, while PSW's and Centerline's motion to dismiss the Pennsylvania Complaint was still pending, PPO moved this Court to stay the California Action. (No. 11-CV-3429, ECF No. 13.)

_____

[1] PPO also sued Amtrak International, S.A. ("Amtrak") and Patriarc Holdings, Inc. ("Patriarc"), for misrepresentation.  The summons returned unexecuted as to Amtrak on July 5, 2011 (No. 11-CV-3429, ECF No. 8).  The summons returned executed as to Patriarc on July 11, 2011 (Id., ECF No. 11); however, Patriarc has not entered an appearance.

On August 12, 2011, following briefing by the parties, the Court held oral argument on both the motion to dismiss and the motion to stay. The Court questioned counsel about a footnote in PSW's and Centerline's brief in response to PPO's motion to stay indicating that PSW and Centerline "have no desire to litigate in two fora" and "would stipulate to transfer the California action to Pennsylvania and consolidate it with [the Pennsylvania Action] if this Court does not grant [their] Motion to Dismiss." (No. 11-CV-3429, ECF No. 17 n.1.) The Court noted that the Pennsylvania Action and the California Action are basically mirror images of one another, and explained that it was authorized to stay the California Action under the first-filed rule. The parties discussed whether Pennsylvania's or California's choice-of-law rules would apply to the California Action if it were transferred to this Court, an issue that the Court explained did not need to be resolved at that time. Following this discussion, PSW and Centerline agreed to file a motion in the Eastern District of California to transfer the California Action to this Court and consolidate it with the Pennsylvania Action. On August 17, 2011, the parties stipulated to transfer the California Action to this Court, and it was docketed as a separate civil action (No. 11-CV-5272).

That same day, the Court issued an opinion, denying PPO's motion to stay as moot and noting that "[o]nce the California Action is transferred here, the Court anticipates realigning the parties so that the complaint in the California Action becomes a counterclaim in this action." Premier Payments Online, Inc. v. Payment Sys. Worldwide, No. 11-CV-3429, 2011 WL 3652442, at *1 & n.2 (E.D. Pa. Aug. 18, 2011). In the opinion, the Court also denied PSW's and Centerline's motion to dismiss. Id. at *4-*7.

On September 1, 2011, PSW and Centerline filed a counterclaim (the "Pennsylvania

Counterclaim" or "Pa. Countercl.") in the Pennsylvania Action, asserting causes of action for

breach of contract (Counterclaim Count I), unjust enrichment  (Counterclaim Count II),

declaratory relief (Counterclaim Count III), and conversion  (Counterclaim Count IV).  (No. 11-

CV-3429, ECF No. 29.)  The allegations supporting the causes of action for breach of contract,

unjust enrichment, and declaratory relief in the Pennsylvania Counterclaim are virtually identical

to the affirmative claims asserted by PSW and Centerline in the California Complaint.  The table

below compares the causes of action asserted in the California Complaint with those asserted in

the Pennsylvania Counterclaim.

| California Complaint | Pennsylvania Counterclaim |
| --- | --- |
| Breach of Contract (Count II) | Breach of Contract (Counterclaim Count I) |
| Unjust Enrichment (Count III) | Unjust Enrichment (Counterclaim Count II) |
| Declaratory Relief (Count IV) | Declaratory Relief (Counterclaim Count III) |
| Willful Failure to Pay Commissions (Count I) | Conversion (Counterclaim Count IV) |

As the table indicates, the only substantive difference between the California Complaint and the

Pennsylvania Counterclaim is that the former asserts a cause of action for willful failure to pay

commissions, whereas the latter asserts a cause of action for conversion.

On September 26, 2011, PPO filed a motion seeking dismissal of the California

Complaint and certain counts of the Pennsylvania Counterclaim, as well as a more definite

statement, pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure.  (No.

11-CV-3429, ECF No. 31; No. 11-CV-5272, ECF No. 7).  On October 20, 2011, PSW and

Centerline filed a response to PPO's motion. (No. 11-CV-3429, ECF No. 34; No. 11-CV-5272,

ECF No. 9.)  On October 31, 2011, PPO filed a reply in further support of the motion.  (No. 11-

4

CV-3429, ECF No. 35; No. 11-CV-5272, ECF No. 11.)

## II.    Factual Background[2]

PPO markets and sells credit card processing services to merchants.  (Ca. Compl. ¶ 8; Pa. Countercl. ¶ 5.)  The fees PPO earns from providing these services are based primarily on the volume of credit card transactions processed by merchants.  (Ca. Compl. ¶ 8; Pa. Countercl. ¶ 5.)  PPO pays sales agents commissions to refer merchants to it.  (Ca. Compl. ¶ 8; Pa. Countercl. ¶ 5.)  The commissions a particular sales agent earns from PPO are based primarily on the volume of credit card transactions processed by merchants referred to PPO by the agent.  (Ca. Compl. ¶ 8; Pa. Countercl. ¶ 5.)  PSW is one such sales agent for PPO.  (Ca. Compl. ¶ 9; Pa. Countercl. ¶ 6.)

Originally, PPO's predecessor, CNP International Incorporated ("CNP"), and Centerline entered into a written agreement under which Centerline would refer merchants to CNP in exchange for commissions on the fees CNP earned on credit card transactions processed by those merchants.  (Ca. Compl. ¶ 10; Pa. Countercl. ¶ 7.)  Under the agreement, Centerline allegedly was not responsible for merchant chargebacks.  (Ca. Compl. ¶ 14; Pa. Countercl. ¶ 11.)  The agreement between Centerline and CNP later terminated.  (Ca. Compl. ¶ 10; Pa. Countercl. ¶ 7.)

Subsequently, PPO proposed a written agreement to PSW for the provision of merchant referrals.  (Ca. Compl. ¶ 10; Pa. Countercl. ¶ 7.)  PSW rejected the proposal because it found the

---

[2]The Court's prior Memorandum on PPO's motion to stay the California Action and PSW's and Centerline's motion to dismiss the Pennsylvania Complaint described the transactions and occurrences relevant to the present dispute.  See Premier Payments Online, Inc. v. Payment Sys. Worldwide, No. 11-CV-3429, 2011 WL 3652442, at *2-*3 (E.D. Pa. Aug. 18, 2011).  For purposes of the instant motion, however, the Court draws the factual background from the California Complaint and the Pennsylvania Counterclaim.

terms of the agreement unacceptable.  (Ca. Compl. ¶ 10; Pa. Countercl. ¶ 7.)  However, PPO and PSW entered into an oral agreement under which PSW would act as a sales agent for PPO and earn commissions in accordance with the payment structure previously in place between Centerline and CNP.  (Ca. Compl. ¶¶ 11, 13; Pa. Countercl. ¶¶ 8, 10.)  Under the agreement, PPO allegedly was obligated to make payments to PSW once per month.  (Ca. Compl. ¶ 13; Pa. Countercl. ¶ 10.)  Moreover, PPO allegedly was obligated to evaluate the risks posed by merchants referred to it by PSW and bear the risk of any potential losses from chargebacks associated with merchants PSW referred to PPO.  (Ca. Compl. ¶ 18; Pa. Countercl. ¶ 15.)

As sales agent, PSW identified and solicited largely internet-based merchants in need of credit card processing services and referred them to PPO.  (Ca. Compl. ¶ 12; Pa. Countercl. ¶ 9.) From approximately March 2006 to June 2009, PPO paid PSW in accordance with the oral agreement.  (Ca. Compl. ¶ 14; Pa. Countercl. ¶ 11.)  However, on or about June 2009, PPO discontinued paying PSW commissions for the merchants PSW referred to PPO.  (Ca. Compl. ¶ 14; Pa. Countercl. ¶ 11.)

In response to PSW's inquiries, PPO notified PSW that it unilaterally decided to withhold commissions from PSW in an amount equal to the "potential exposure" from chargebacks associated with merchants PSW referred to PPO.  (Ca. Compl. ¶¶ 15, 16; Pa. Countercl. ¶¶ 12, 13.)  PPO also informed PSW that it took such action because of fraud related to certain merchant accounts.  (Ca. Compl. ¶ 20; Pa. Countercl. ¶ 17;  No. 11-CV-3429, ECF No. 34, at 3-4; No. 11-CV-5272, ECF No. 9, at 3-4.)  As of the filing of the California Complaint, PPO had withheld $202,066.88 in commissions allegedly owed to PSW, even though PPO only incurred $2,173.63 in actual chargebacks associated with merchants PSW referred to PPO.  (Ca. Compl.

¶¶ 16, 19; Pa. Countercl. ¶¶ 13, 16.)

**III.    Parties' Contentions**[3]

PPO contends that the California Complaint and certain counts of the Pennsylvania Counterclaim should be dismissed for several reasons.  Initially, PPO contends that the California Complaint should be dismissed in its entirety pursuant to the first-filed rule and the compulsory counterclaim rule.  Next, PPO contends that, even if dismissal of the entire California Complaint is not warranted, certain counts asserted therein should still be dismissed.  Specifically, PPO contends the counts for unjust enrichment asserted in both the California Complaint and the Pennsylvania Counterclaim should be dismissed because unjust enrichment cannot be plead on top of a contract claim.  In addition, PPO contends that the count for conversion asserted in the Pennsylvania Counterclaim should be dismissed because it is barred by the gist-of-the-action doctrine and fails to state a claim for relief.  Further, PPO contends that the count for willful failure to pay commissions under the California Act asserted in the California Complaint should be dismissed because the Act does not apply to this case, and even it did, application of the Act would violate the dormant Commerce Clause of the United States Constitution.  Finally, PPO and Centerline contend that PSW should be required to file a more definite statement because the Pennsylvania Counterclaim does not specify which agreements PSW and Centerline rely on in support of their breach of contract claim, it does not distinguish between PSW and Centerline, and it does not specify the damages that PSW and Centerline respectively seek.

---

[3]Because PSW and Centerline jointly filed a response to PPO's instant motion, the Court will attribute the arguments made in the response to both PSW and Centerline, even though certain arguments asserted therein relate only to the California Action, in which Centerline is not a plaintiff.

In response, PSW and Centerline contend that neither the first-filed rule nor the compulsory counterclaim rule is applicable, and even if they did apply, neither rule would require dismissal of the California Complaint.  Rather, the appropriate remedy, PSW and Centerline argue, is for the Court to consolidate the California Action with the Pennsylvania Action.[4]  PSW and Centerline also contend that they have properly plead unjust enrichment as an alternative theory of liability to breach of contract.  Moreover, PSW and Centerline contend that the gist-of-the-action doctrine does not bar their conversion claim because they possess a property interest in the commissions withheld by PPO and that they have properly stated a claim for conversion. Further, PSW and Centerline contend that the California Act does, indeed, apply to this case, and that PPO's dormant Commerce Clause challenge is baseless.  Finally, PSW and Centerline contend that they should not be required to file a more definite statement because the Pennsylvania Counterclaim provides adequate detail for PPO to frame a response and they are unable to provide further detail at this time without the benefit of discovery.

## IV.    Legal Standards

### A.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

-------------------

[4]Additionally, PSW and Centerline argue that PPO has waived its compulsory counterclaim argument and should be judicially estopped from raising it.

B.      **Standards of Review**

1.      **Motion to Dismiss for Failure to State a Claim**

A claim may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Generally, a district court may consider only facts alleged in the complaint and its attachments on a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). The court may also take into consideration a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

The Third Circuit has held that a district court must conduct a two-part analysis to determine whether a claim survives a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must distinguish between the factual and legal elements of the claim. Id. at 210–11. The court must accept as true the plaintiff's well-pled allegations and construe the complaint in the light most favorable to the plaintiff, Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 253 (3d Cir.2009) (citing Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 405 (3d Cir.2008)), but not "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Fowler, 578 F.3d at 210 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Second, the court must inquire whether the complaint states a plausible claim to relief. Id. at 211 (citing Iqbal, 129 S. Ct. at 1950). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

### 2.     Motion for a More Definite Statement

Under Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The Rule 12(e) 'motion shall point out the defects complained of and the details desired.'" Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006) (quoting Fed. R. Civ. P. 12(e)). "When presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief." Id.

In general, "a motion for a more definitive statement is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." Frazier v. SEPTA, 868 F. Supp. 757, 763 (E.D. Pa. 1996); see also Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC, 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011) ("Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim, motions for a more definite statement are 'highly disfavored'").  "[I]t is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."  Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir. 1967).  Ultimately, however, "the decision to grant a motion for a more definite statement is committed to the discretion of the district court." Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008); accord MK

10

Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 737 (D.N.J. 2008).

**V.    Discussion**

    **A.    Motion to Dismiss for Failure to State a Claim**

        **1.    Contentions Related to Dismissal of California Complaint**

            **a.    First-Filed Rule**

Initially, the Court rejects PPO's contention that the first-filed rule requires dismissal of the California Complaint in its entirety.  The first-filed rule is intended to "encourage[] sound judicial administration and promote[] comity among federal courts of equal rank" by "prevent[ing] the judicial embarrassment of conflicting judgments."  E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 972, 977. (3d Cir. 1988).  As a general matter, under the first-filed rule, "where there are parallel proceedings in different federal courts, the first court in which jurisdiction attaches has priority to consider the case."  FMC Corp. v. AMVAC Chem. Co., 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005).

However, "courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule."  E.E.O.C., 850 F.2d at 972.  "Bad faith and forum-shopping have always been regarded as proper bases for departing from the rule."  Id. at 976 (citations omitted).  "Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit, and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum."  Id. (same).  In determining whether to apply the first-to-file, "a court must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."  Id. at 977 (quoting Langnes v. Green, 282

U.S. 531, 541 (1931)).

At this stage of the litigation, the first-filed rule does not apply.  Crucially, the Eastern

District of California no longer has jurisdiction over the California Action because it was

transferred to this Court by agreement to be litigated in conjunction with the Pennsylvania Action

before the undersigned.  See In re United States, 273 F.3d 380, 383 (3d Cir. 2001) ("[W]hen a

transfer of a case has been completed, the transferor court – and the appellate court that has

jurisdiction over it – lose all jurisdiction over the case." (internal quotations omitted)).[5]

PPO has not cited, nor is this Court aware of, any case in which a federal court within the

Third Circuit has applied the first-filed rule when two actions were pending before the same

court.  As the authorities cited by PPO itself indicate, courts have applied the first-filed rule in

circumstances in which coordinate district courts have concurrent jurisdiction over different

cases involving the same subject matter.  See, e.g., Southampton Sports Zone, Inc. v. ProBatter

Sports, LLC, No. 03-CV-3185, 2003 WL 22358439, at *5 (E.D. Pa. Sept. 10, 2003) (transferring

second-filed action to forum of first-filed action); Koresko v. Nationwide Life Ins. Co., 403 F.

Supp. 2d 394, 404 (E.D. Pa. 2005) (same); Zelenkofske Axelrod Consulting, LLC v. Stevenson,

No. 99-CV-3508, 1999 WL 592399, at *5 (E.D. Pa. Aug. 5, 1999) (same).  Such circumstances

are not present here.

Moreover, even if the first-filed rule did apply, it would not warrant dismissal of the

California Complaint.  When the first-filed rule applies, a court has the option of dismissing the

---

[5]At oral argument, the Court made clear to the parties that it believed the first-filed rule
applied in this case.  At that time, however, the California Action and the Pennsylvania Action
were pending before different district courts and the parties had yet to enter into a stipulation to
transfer the California Action.

second-filed case without prejudice, staying it for the duration of the first-filed case, or transferring it to the forum where the first-filed case was brought.  Koresko, 403 F. Supp. 2d at 403; see also Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052-53 (E.D. Pa. 2006) (noting that "courts have the option to dismiss, stay, or transfer the later filed action"). Here, "dismissal . . . would [not] serve the interest of the parties in having their issues resolved promptly."  Koresko, 403 F. Supp. 2d at 404.  As discussed more fully below, the Court believes that consolidating the California Action with the Pennsylvania Action and realigning the parties would serve this interest most effectively.

Accordingly, the Court will deny PPO's motion to dismiss pursuant to the first-filed rule.

### b.  Compulsory Counterclaim Rule

The Court also rejects PPO's contention that the compulsory counterclaim rule requires dismissal of the California Complaint in its entirety.  Rule 13(a)(1) of the Federal Rules of Civil Procedure, which sets forth the general compulsory counterclaim rule, provides:

> A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party, if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1).  "The policy underlying this rule is judicial economy."  Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002).

"For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether

the counterclaim 'bears a logical relationship to an opposing party's claim.'" Id. (quoting Xerox

Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)). "[A] logical relationship between

claims exists where separate trials on each of the claims would 'involve a substantial duplication

of effort and time by the parties and the courts.'" Id. at 389-90 (quoting Xerox, 576 F.2d at

1059). "Such a duplication is likely to occur when claims involve the same factual issues, the

same factual and legal issues, or are offshoots of the same basic controversy between the parties."

Id. at 390.

 In this case, PSW and Centerline do not dispute that the counts in the California

Complaint are logically related to the counts in the Pennsylvania Complaint. Nor could they. As

this Court acknowledged at oral argument, the Pennsylvania Action and the California Action are

basically mirror images of one another. Thus, the relevant question for the Court is not whether

the compulsory counterclaim rule applies – it does – but what remedy is appropriate for the

assertion of compulsory counterclaims in the California Complaint under the circumstances of

this case.

 Here, judicial economy would be best served by consolidating the California Action with

the Pennsylvania Action. See Wells v. Rockefeller, 728 F.2d 209, 214 (3d Cir. 1984) (noting

that when a claim assertable as a compulsory counterclaim in another action is brought in the

same court as that other action, both actions can be consolidated); 6 Charles Alan Wright et al.,

Federal Practice & Procedure § 1418 (3d ed. 2007) ("Of course, if both actions are pending

before the same federal court, they can be consolidated in whatever manner is most convenient

for the purpose of trial.") Indeed, as the Court indicated in its previous Memorandum in this

case, "[o]nce the California Action is transferred here, the Court anticipates realigning the parties

so that the complaint in the California Action becomes a counterclaim in this action."  <u>Premier</u> <u>Payments Online</u>, 2011 WL 3652442, at *1 n.2.  Nothing material has occurred in this case since then to warrant a change in judgment.

Accordingly, the Court will deny PPO's motion to dismiss pursuant to the compulsory counterclaim rule.  The Court, however, will consolidate the California Action with the Pennsylvania Action.  PSW and Centerline may file an amended counterclaim in the Pennsylvania Action to add the claim for willful failure to pay commissions under the California Act, which was asserted in the California Complaint.  Should PSW and Centerline do so, the Court's rulings on the specific counts of the California Complaint in this Memorandum will apply to the amended counterclaim.  The Court will order the Clerk of Court to close the California Action.

The Court will now turn to PPO's specific contentions in support of dismissal of certain counts of the California Complaint and the Pennsylvania Counterclaim.

### 2. Contentions Related to Dismissal of Certain Counts of the California Complaint and the Pennsylvania Counterclaim

#### a. Choice of Law

PPO has moved to dismiss only certain counts asserted in the California Complaint and the Pennsylvania Counterclaim.  Specifically, PPO has moved to dismiss the counts for unjust enrichment asserted in both the California Complaint and the Pennsylvania Counterclaim, the count for conversion asserted in the Pennsylvania Counterclaim only, and the count for willful failure to pay commissions under the California Act asserted in the California Complaint only.  In addressing the counts for unjust enrichment and conversion, the parties rely on Pennsylvania

law.  But in addressing the count for willful failure to pay commissions, they rely on California

law.  PPO notes, however, that once a factual record is developed, it will likely assert that

California law does not govern the latter count.

In federal diversity actions, district courts generally must apply the choice-of-law rules of

the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  However, in

Van Dusen v. Barrack, 376 U.S. 612 (1964), the Supreme Court held that when a civil action has

been transferred from one district court to another on a motion of the defendant pursuant to 28

U.S.C. § 1404(a), the transferee court must apply the choice-of-law rules of the state in which the

transferor court sits.  Id. at 639.  Subsequently, in Ferens v. John Deere Co., 494 U.S. 516 (1990),

the Court extended the Van Dusen rule to transfers initiated by the plaintiff pursuant to §

1404(a).  Id. at 527-28.  Thus, after a transfer by either party, when "[f]aced with a choice-of-law

question, federal courts in the district to which the case has been transferred under § 1404(a)

must apply the law of the transferor state."  Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007).

Recently, the Third Circuit held that the Van Dusen rule applies to sua sponte transfers pursuant

to § 1404(a) as well.  Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 171 (3d Cir. 2011).

No federal court in the Third Circuit has addressed the application of the Van Dusen rule

in the precise circumstances of this case.  The Fourth Circuit, however, did address the rule's

application in remarkably similar circumstances in Volvo Construction Equipment North

America, Inc. v. CLM Equipment Co., 386 F.3d 581 (4th Cir. 2004).  There, plaintiffs initially

filed a lawsuit against defendants in the United States District Court for the Western District of

North Carolina.  Id. at 589.  Defendants later filed a separate lawsuit against plaintiffs in the

United States District Court for the Eastern District of Arkansas.  Id. at 590.  Defendants then

moved the North Carolina court to dismiss, abstain from, or stay the North Carolina action, in deference to the Arkansas action. <u>Id.</u> Shortly thereafter, plaintiffs moved the Arkansas court to dismiss, abstain from, or stay the Arkansas action, in deference to the North Carolina action. <u>Id.</u> The Arkansas Court granted that motion and stayed the Arkansas action pending resolution of defendants' motion in North Carolina. <u>Id.</u> The North Carolina court subsequently denied defendants' motion. <u>Id.</u>

Upon being advised of the North Carolina court's ruling on defendants' motion, the Arkansas court transferred the Arkansas action to the Western District of North Carolina. <u>Id.</u> Thereafter, defendants filed a counterclaim in the North Carolina action, asserting the same claims they asserted against plaintiffs in the Arkansas litigation. <u>Id.</u> at 590 & n.8. Subsequently, the parties consented to consolidation of the two actions in the North Carolina court. <u>Id.</u> at 590. The North Carolina court later granted plaintiffs partial judgment on the pleadings, dismissed defendants' counterclaims in the North Carolina litigation, and dismissed defendants' affirmative claims in the Arkansas litigation. <u>Id.</u> at 590-91.

On appeal, defendants argued that the <u>Van Dusen</u> rule required the Fourth Circuit to apply Arkansas law to their affirmative claims in the Arkansas action and North Carolina law to their counterclaims in the North Carolina action. <u>Id.</u> at 600. The Fourth Circuit noted, however, that the transfer at issue "was not a typical § 1404(a) convenience-of-the-witness transfer." <u>Id.</u> Instead, "the Arkansas litigation was transferred to North Carolina because the North Carolina court declined to defer to [defendants'] later filed Arkansas case" – a decision, which the Fourth Circuit noted, was "entirely proper," given that "[t]he North Carolina litigation was first filed, venue was proper in the Western District of North Carolina, and that court possessed jurisdiction

17

over all the parties." Id.  Relying on language from Van Dusen itself, the Fourth Circuit

reasoned:

> The legislative history of § 1404(a) certainly does not justify the rather startling
> conclusion that one might get a change of law as a bonus for a change of venue.
> Indeed, an interpretation accepting such a rule would go far to frustrate the
> remedial purposes of § 1404(a). If a change of law were in the offing, the parties
> might well regard the section primarily as a forum-shopping instrument.

Id. (quoting Van Dusen, 376 U.S. at 635-36).  Accordingly, under the circumstances, the Fourth

Circuit explained that it was "not at all sure that the Van Dusen precedent should be blindly and

mechanically applied."  Id.

The Fourth Circuit observed that the claims asserted by defendants in the Arkansas

litigation were "mirror images" of their counterclaims in the North Carolina action.  Id.  Thus,

"applying Arkansas law to the Arkansas claims and North Carolina law to the North Carolina

counterclaims could (in theory, at least) lead to different results on identical claims."  Id.

Therefore, the Fourth Circuit concluded that "the choice-of-law rules of only one state should be

applied to this action."  Id.  However, the Fourth Circuit did not have to "definitively decide how

this thorny issue should be resolved, because the choice-of-law principles of North Carolina and

Arkansas are sufficiently similar that the outcome of this dispute would be the same under either

set of rules."  Id.

The Fourth Circuit's concerns about the rigid application of the Van Dusen rule in Volvo

likely should apply to this case.  As in Volvo, the transfer at issue here was not a typical

convenience-of-the-witness transfer.  Rather, the parties stipulated to transfer the California

Action to the Eastern District of Pennsylvania after this Court indicated to them at oral argument

that it was authorized to stay the California Action under the first-filed rule.[6]  Moreover, as this Court previously noted, the Pennsylvania Action and the California Action are basically mirror images of one another.  Indeed, with one exception, the counts asserted in the California Complaint are identical to those asserted in the Pennsylvania Counterclaim.  Thus, applying the Van Dusen rule mechanically in this case could potentially undercut the policy against forum-shopping articulated in Van Dusen itself.  However, for reasons discussed below, at this juncture, the Court need not definitively determine whether California's or Pennsylvania's choice-of-law rules, or some combination thereof, apply to the specific counts that PPO has moved to dismiss.

> **b.      Unjust Enrichment**

PPO contends that the counts for unjust enrichment asserted in both the California Complaint and the Pennsylvania Counterclaim should be dismissed because unjust enrichment cannot be plead on top of a contract claim.  In response, PSW and Centerline contend that unjust enrichment has been properly plead as an alternative theory of liability to breach of contract.

As a threshold matter, there appears to be an actual conflict in the most basic sense between Pennsylvania and California law in regard to unjust enrichment.  See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 231 (3d Cir. 2007) (explaining that before undertaking a choice-of-law analysis, "we must first determine whether there is an 'actual' conflict" between the laws of different states).  While Pennsylvania recognizes a cause of action for unjust enrichment, California does not.  See Hill v. Roll Int'l Corp., 195 Cal. App. 4th 1295, 1307, 128 Cal. Rptr.

---

[6]Although PSW and Centerline assert that the California Action was transferred pursuant to §1404(a), it actually appears to have been transferred pursuant to § 1404(b) because the parties stipulated to the transfer.  Van Dusen and its progeny involved transfers pursuant to § 1404(a). The Court need not address whether this distinction is material to the application of the Van Dusen rule under the circumstances of this case at this time.

109 (2011); Levine v. Blue Shield of Cal., 189 Cal. App. 4th 1117, 1138, 117 Cal. Rptr. 3d 262

(2010); Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010);

Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003).

Indeed, under California law, "unjust enrichment is not a cause of action, just a restitution

claim." Hill, 189 Cal. App. 4th at 1307.  Accordingly, numerous federal courts in California

have dismissed claims for unjust enrichment because such a claim does not exist as a stand-alone

cause of action.  See, e.g., Fraley v. Facebook, Inc., No. 11-CV-1726-LHK, 2011 WL 6303898,

at *23 (N.D. Cal. Dec. 16, 2011); LaCourt v. Specific Media, Inc., No. SACV 10-1256-

GW(JSGx), 2011 WL 1661532, at *8 (C.D. Cal. Apr. 18, 2011); Robinson v. HSBC Bank USA,

732 F. Supp. 2d 976, 987 (N.D. Cal. 2010); In re DirecTV Early Cancellation Litig., 738 F. Supp.

2d 1062, 1091-92 (C.D. Cal.2010).

　　　　To the contrary, under Pennsylvania law, to state a claim for unjust enrichment, the

plaintiff must allege "benefits conferred on one party by another, appreciation of such benefits by

the recipient, and acceptance and retention of these benefits under such circumstances that it

would be inequitable [or unjust] for the recipient to retain the benefits without payment of

value." Allegheny Gen. Hosp. v. Philip Morris, 228 F.3d 429, 447 (3d Cir. 2000) (quoting 16

SUMMARY OF PA. JUR. 2D COMMERCIAL LAW § 2.2 (1994)).  Unjust enrichment is a

"quasi-contractual doctrine" that does not apply in cases where the parties have a written or

express contract.  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir.1987)

(quoting Ben. Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174 (3d Cir. 1985)).

　　　　A plaintiff is permitted to plead alternative theories of recovery based on breach of

contract and unjust enrichment in cases where there is a "question as to the validity of the

contract in question." <u>AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC</u>, Civ. A. No. 10-6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011) (dismissing a claim for unjust enrichment where neither party contested the validity of contract).  Where the existence of a contract is uncertain, pleading in the alternative is permitted, even though a plaintiff cannot recover under both theories. <u>See</u> <u>Alpart v. Gen. Land Partners, Inc.</u>, 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) (denying motion to dismiss unjust enrichment claim because it had not yet been determined whether express contract existed); <u>United States v. Kensington Hosp.</u>, 760 F. Supp. 1120, 1135 (E.D. Pa.1991) (denying motion to dismiss unjust enrichment claim pled in the alternative and instructing defendants to raise the issue in a motion for summary judgment after the completion of discovery).

Previously, the Court – applying Pennsylvania law – denied PSW's and Centerline's motion to dismiss PPO's unjust enrichment claim in the Pennsylvania Action because there was a dispute as to whether the parties were operating based on a course of dealing or a written contract.  Now, however, on PPO's motion to dismiss PSW's and Centerline's unjust enrichment claims, the parties agree that no written contract exists.

Despite the parties' shift of positions, dismissing the unjust enrichment claims would not be warranted at this time under Pennsylvania law.  PSW and Centerline allege that PSW entered into an oral agreement with PPO whereby PSW would earn commissions in accordance with the payment structure outlined in the previous written contract between Centerline and CNP. However, at this stage of the litigation, it is uncertain whether the oral agreement is a valid and enforceable contract governing the relationship between PPO and PSW.

Pending discovery and briefing, the Court will not decide whether the choice-of-law rules

of California or Pennsylvania apply, or whether those rules require the application of California

or Pennsylvania substantive law in regard to unjust enrichment.  Accordingly, the Court will

deny PPO's motion to dismiss the unjust enrichment claims without prejudice.

### c.      Conversion

Next, PPO contends that the conversion count[7] asserted in the Pennsylvania Counterclaim

should be dismissed because it is barred by the gist-of-the-action doctrine and because the failure

to pay commissions cannot form the basis of a conversion claim.  In response, PSW and

Centerline contend that the gist of the action doctrine does not apply because they have a

property interest in the commissions withheld by PPO, and that their allegations adequately state

a claim for conversion.[8]

The gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of

contract claims into tort claims."  Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d

Cir. 2010) (quoting Erie Ins. Exch. v. Abbott Furnace Co., 972 A.2d 1232, 1238 (Pa. Super. Ct.

2009)).  "The critical conceptual distinction between [these claims] is that the former arises out

of 'breaches of duties imposed by mutual consensus agreements between particular individuals,'

while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'"  Id.

(quoting Erie Ins. Exch., 972 A.2d at 1238 (quoting Reardon, 926 A.2d at 486-87)).

Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the

---

[7]Although PSW and Centerline styled their claim for conversion as one for common law
and statutory conversion, counsel for PSW and Centerline informed counsel for PPO that the
claim seeks relief for common law conversion only.  (See No. 11-CV-3429, ECF No. 31-2, Ex.
2; 11-CV-5272, ECF No. 7-2, Ex. 2.)

[8]There is no Van Dusen issue as to the conversion claim because PSW and Centerline
asserted it in the Pennsylvania Counterclaim only.  Thus, the Court will apply Pennsylvania law.

action doctrine, it has considerable support from Pennsylvania appellate courts.  See, e.g.,

Reardon v. Allegheny Coll., 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007) (applying gist of the

action doctrine to bar negligence claim); eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10,

20-21 (Pa. Super. Ct. 2002) (same with respect to fraud claims).  Accordingly, the Third Circuit

has predicted that the Pennsylvania Supreme Court would adopt the gist of the action doctrine.

See Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010); Bohler-

Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103-04 (3d Cir. 2001).

Under Pennsylvania law, conversion is defined as "the deprivation of another's right of

property in, or use or possession of, a chattel, without the owner's consent and without lawful

justification."  Francis J. Bernhardt, III, P.C. v Needleman, 705 A.2d 875, 879 (Pa. Super. Ct.

1997) (quoting Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing Stevenson

v. Econ. Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964))).  To maintain a cause of action for

conversion, "[t]he party claiming conversion must have had an immediate right of possession of

the property at the time it was allegedly converted."  Corporate Plaza Partners, Ltd. v. Am.

Employers' Ins. Co., No. 95-CV-5234, at *1 (E.D. Pa. Apr. 3, 1996).

"Courts have dismissed conversion claims under the gist of the action doctrine where the

alleged entitlement to the chattel arises solely from the contract between the parties."  Brown &

Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 622-23 (E.D. Pa. 2010) (collecting cases); accord

Integrated Waste Solutions, Inc. v. Goverdhanam, No. 10-CV-2155, 2010 WL 4910176, at *14

(E.D. Pa. Nov. 30, 2010) (same).  However, "[w]hen a plaintiff has a property interest in the

thing that is the subject of a [conversion] claim, the gist of the action doctrine does not bar

recovery under a conversion theory even though the property may also be the subject of a

contract." Brown & Brown, 745 F. Supp. 2d at 623 (quoting Orthovita, Inc. v. Erbe, No. 07-CV-2395, 2008 WL 423446, at *6 (E.D. Pa. Feb. 14, 2008) (citing Berger & Montague v. Scott & Scott, LLC, 153 F. Supp. 2d 750, 753-54 (E.D. Pa. 2001).

     At this stage of the litigation, the Court declines to determine whether the gist of the action doctrine bars the conversion claim.  When the validity and if valid, the effect, of a contract is uncertain, courts have found application of the gist of the action doctrine on a motion to dismiss to be inappropriate.  See, e.g., Hart v. Univ. of Scranton, No. 3:11-CV-1576, 2011 WL 6339826, at *4 (M.D. Pa. Dec. 16, 2011) (holding that gist of the action doctrine did not bar fraudulent misrepresentation claim because "the very existence of the contract is unsettled"); M.H. Rydek Elec., LLC v. Zober Indus., Inc., No. 07-CV-3885, 2007 WL 3407130, at *2 (E.D. Pa. Nov. 15, 2007) (noting that "many courts [] have been reluctant to apply the gist of the action doctrine to dismiss tort claims where the existence of a contract is still in question") (collecting cases).

     PSW and Centerline argue that they have a property interest in the commissions withheld by PPO.  But PPO's alleged duty to pay commissions very well may have arisen solely from the oral agreement between the parties.  As discussed above, however, it is uncertain at this juncture whether the oral agreement is indeed a valid and enforceable contract.  Thus, the Court cannot yet say with certainty that PPO's alleged duty to pay commissions arose solely from the oral agreement.

     For similar reasons, the Court rejects PPO's contention that PSW and Centerline have failed to satisfy the elements of conversion to survive a motion to dismiss.  PPO relies on Communications Programming, Inc. v. Summit Mfg., Inc., No. 98-CV-253, 1998 WL 329265

(D.N.J. June 16, 1998), for the proposition that a failure to pay commissions does not constitute conversion.  However, in that case, the court made clear that plaintiff's alleged right to commissions arose solely from a contract it had with defendant, and not from some extra-contractual source, such as a fiduciary relationship.  Id. at *5 & n.5.

Here, by contrast, it is unclear whether PSW's and Centerline's alleged right to commissions arose solely from their oral agreement, or from their course of dealing, or from some other source, or from some combination thereof.  Moreover, assuming that such a right did exist, it is unclear when exactly that right arose.  At this stage of litigation, the Court is unable to resolve these inquiries without the benefit of discovery.   Thus, the Court cannot determine whether PSW and Centerline had an immediate right to commissions at the time of the alleged conversion.

Accordingly, the Court will deny PPO's motion to dismiss the conversion claim.

### d.    Willful Failure to Pay Commissions

PPO further contends that the count for willful failure to pay commissions under the California Act in the California Complaint should be dismissed because the Act does not apply to this case, and even it did, application of the Act would violate the dormant Commerce Clause of the United States Constitution.  In response, PSW and Centerline contend that the Act does, indeed, apply to this case, and that there is no basis for a dormant Commerce Clause challenge.

Section 1738.15 of the California Act provides a civil action for treble damages for a "wholesale sales representative" against "a manufacturer, jobber, or distributor who willfully fails to enter into a written contract as required by this chapter or willfully fails to pay commissions as provided in the written contract."  Cal. Civ. Code § 1738.15.   Section

25

1738.12(a) of the Act defines "manufacturer" as "any organization engaged in the business of producing, assembling, mining, weaving, importing or by any other method of fabrication, a product tangible or intangible, intended for resale to, or use by the consumers of this state."  Cal. Civ. Code § 1738.15.  Additionally, section 1738.12(b) of the Act defines "jobber" as "any business organization engaged in the business of purchasing products intended for resale and invoicing to purchasers for resale to, or use by, the consumers of this state."  Cal. Civ. Code § 1738.12(b).  Moreover, section 1738.12(e) of the Act defines "wholesale sales representative" as "any person who contracts with a manufacturer, jobber, or distributor for the purpose of soliciting wholesale orders, is compensated, in whole or part, by commission, but shall not include one who places orders or purchases exclusively for his own account for resale and shall not include one who sells or takes orders for the direct sale of products to the ultimate consumer." Cal. Civ. Code § 1738.12(e).

In this case, dismissal of the count for willful failure to pay commissions is not warranted at this stage of the litigation.  Without discovery and briefing, it is premature to decide whether the Court should apply the choice-of-law rules of California or Pennsylvania, and whether those rules require a court to recognize a cause of action for willful failure to pay commissions under the California Act.

In addition, based on the Court's review, there appears to be a dearth of cases applying the California Act, much less any case applying the Act in the precise circumstances here.  Thus, without the benefit of discovery and briefing as to the scope of the Act, it would be fruitless for the Court to attempt to determine whether PSW and Centerline are "wholesale sales representatives" under the Act, whether PPO is a "manufacturer" or "jobber" under the Act, or

26

whether PPO acted with the requisite intent to be held liable under the Act, at this juncture.

Further, it is premature for the Court to determine whether the dormant Commerce Clause bars the claim for willful failure to pay commissions at this stage of the litigation.  To determine whether a state regulation violates the dormant Commerce Clause, a court "must first assess 'whether the state regulation at issue discriminates against interstate commerce 'either on its face or in practical effect.'" Tri-M Group, LLC v. Sharp, 638 F.3d 406, 427 (3d Cir. 2011) (quoting Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 298 F.3d 201, 210 (3d Cir. 2002) (quoting Maine v. Taylor, 477 U.S. 131, 138 (1986))).  "Where a regulation discriminates against interstate commerce in favor of local business, such protectionism 'is per se invalid, save in a narrow class of cases in which the [opposing party] can demonstrate, under rigorous scrutiny, that [the state] has no other means to advance a legitimate local interest.'" Id. (quoting Cloverland, 298 F.3d at 211) (emphasis in original).  "If, however, the state regulation is not discriminatory and 'regulates even-handedly' with merely 'incidental' burdens upon interstate commerce, it is subject to a 'balancing test whereby the statute must be upheld unless the burden imposed on interstate commerce is "clearly excessive in relation to the putative local benefits."' " Id. (quoting Cloverland, 298 F.3d at 211 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).  Without the benefit of discovery, the Court is unable to determine the extent to which the Act affects interstate commerce, either as a general matter or as applied to the facts of this case.

Accordingly, the Court will deny PPO's motion to dismiss PSW's claim for willful failure to pay commissions.

**B.**     **Motion for a More Definite Statement**

PPO contends that PSW and Centerline should be required to file a more definite

statement in the Pennsylvania Action because the Pennsylvania Counterclaim does not specify

which agreements PSW and Centerline rely on in support of their breach of contract claim, it

does not distinguish between PSW and Centerline, and it does not specify the damages PSW and

Centerline respectively seek.  In response, PSW and Centerline contend that they should not be

required to file a more definite statement because the Pennsylvania Counterclaim provides

adequate detail for PPO to frame a response and they are unable to provide further detail at this

time without the benefit of discovery.

The Pennsylvania Counterclaim is not so vague or ambiguous that it rises to the level of

unintelligibility, such that PPO cannot reasonably frame a response.  To be sure, contrary to

PPO's contention, the Pennsylvania Counterclaim does specify which agreements PSW and

Centerline rely on in support of their breach of contract claim and it also provides a basis for

distinguishing between PSW and Centerline:

> Centerline, which was owned by the same person who owns [PSW], began doing
> business with CNP . . . pursuant to a written agreement.  CNP then became [PPO].
> Following this, the written agreement between Centerline and CNP terminated
> and [PSW] was formed.  While [PPO] proposed a replacement written contract to
> [PSW], the terms were unacceptable to [PSW] and it refused to sign the proposed
> written agreement.  Thus, [PSW] entered into an oral agreement with [PPO] to
> become sales agent for [PPO].

(Pa. Countercl. ¶¶ 7-8.)  These allegations are incorporated by reference into PSW's and

Centerline's breach of contract claim. (Id. at ¶ 18.)  Although the Pennsylvania Counterclaim

does not specify the damages that PSW and Centerline respectively seek, PPO does not cite any

authority for the proposition that lack of such detail warrants a more definite statement under the

circumstances.  Moreover, PSW and Centerline have asserted that it is not possible for them to provide any more detail without discovery.  The Court has no reason to question this assertion.

Accordingly, the Court will deny PPO's motion for a more definite statement.

**VI.   Conclusion**

For the reasons set forth above, the Court will deny PPO's motion to dismiss the California Complaint and certain counts in the Pennsylvania Counterclaim and for a more definite statement.

An appropriate Order follows.

O:\CIVIL 11-12\11-3429 PPO v PSW\Memo re MTD Cal Compl.wpd